

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| PAULA HILL, *individually and as personal representative of the Estate of Frank Hill*, <br>    Plaintiff, <br><br> vs. <br><br> ASSOCIATES ROOFING & CONSTRUCTION, INC., THE EARTHWORKS GROUP, INC., and JOHN JOE 1–3, <br>    Defendants. <br><br> ASSOCIATES ROOFING & CONSTRUCTION, INC., <br>    Third-Party Plaintiff, <br><br> vs. <br><br> THE LANE CONSTRUCTION CORPORATION *d/b/a/ Rea Contracting*, <br>    Third-Party Defendant. | Civil Action No.: 3:19-00958-MGL |

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANTS' AMENDED JOINT MOTIONS TO DISMISS, OR IN THE
ALTERNATIVE, FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

Plaintiff Paula Hill (Mrs. Hill), individually and as personal representative of her late husband Dr. Frank Hill (Dr. Hill), brought this wrongful death and survival action against the United States of America (USA), Associates Roofing & Construction, Inc. (ARC), The Earthworks Group, Inc. (Earthworks), and John Joe 1–3 for damages under the Federal Tort Claims Act and

South Carolina law. The Court subsequently granted the USA's motion to dismiss for lack of subject matter jurisdiction.

Pending before the Court is ARC and Earthworks' amended joint motions to dismiss for lack of subject matter jurisdiction, or in the alternative, for summary judgment (the amended motions). Having carefully considered the amended motions, the response, the reply, the record, and the applicable law, it is the judgment of the Court ARC and Earthworks' amended motions will be denied.

## II.     FACTUAL AND PROCEDURAL HISTORY

On July 23, 2016, Dr. Hill was involved in a fatal bicycle accident on the shoulder of Hampton Parkway at Fort Jackson in Columbia, South Carolina (the Fort). According to Mrs. Hill, during an early morning ride at the Fort, the front wheel of her husband's bicycle became lodged between the parallel steel bars of a sunken drainage grate located on Hampton Parkway.

The alleged impact of Dr. Hill's front tire connecting with, and becoming stuck between, the parallel steel bars of the sunken drainage grate forced the rear tire of his bicycle into the air and threw his body onto the pavement. The impact of Dr. Hill's body hitting the pavement, Mrs. Hill contends, resulted in his death. The sunken drainage grate at issue consisted of equally spaced parallel steel bars running with the flow of the underground stormwater and the road.

Several years before the accident, the Fort awarded ARC a design-build task order to resurface certain roads on the Fort. As is relevant here, the Fort issued a task order for ARC to resurface Hampton Parkway. ARC hired Earthworks to perform the design and engineering work for the Hampton Parkway resurfacing, and The Lane Construction Corporation d/b/a/ Rea Contracting to supply the labor and materials. Although the Hampton Parkway resurfacing scope

of work referenced adjustments to catch basin lids as they relate to maintaining positive slope after the laying of asphalt, it failed to call for the replacement of, or modification of, any drainage grate that consisted of steel bars running with the flow of traffic.

As is relevant here, ARC and Earthworks filed the instant amended motions, Mrs. Hill responded, and ARC and Earthworks replied. The Court, having been fully briefed on the relevant issues, will now adjudicate ARC and Earthworks' amended motions.

### III.     STANDARD OF REVIEW

#### A.     *Motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1)*

"The plaintiff has the burden of proving that subject matter jurisdiction exists." *Evans v. B.F. Perkins Co., a Div. of Standex Intern. Corp.*, 166 F.3d 642, 647 (4th Cir. 1999). "When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), 'the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" *Id.* (quoting *Richmond, Fredericksburg & Potmac R. Co. v. United States*, 945 F.2d 765, 769 (4th Cir. 1991)). "The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R. Co.*, 945 F.2d at 768.

#### B.     *Motion for summary judgment pursuant to Fed. R. Civ. P. 56*

Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in her favor. *See*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  The moving party has the burden of proving that summary judgment is appropriate.  Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial.  *See* Rule 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

A party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Rule 56(c)(1)(A).  A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."  *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).  Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995).

"[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1996).  "Summary judgment is proper only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987).  The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## IV.     DISCUSSION AND ANALYSIS

### A.     *Whether the Court should grant ARC and Earthworks' motion to dismiss for lack of subject matter jurisdiction*

ARC and Earthworks aver Mrs. Hill "cannot maintain her claims against [them] because they—like the USA—are immune from suit." Mot. at 10.  Mrs. Hill, on the other hand, disagrees and contends "no court has held (as [ARC and Earthworks] propose here) that contractors have blanket immunity whenever they perform work for the federal government."  Resp. in Opp'n at 9.

"The United States, as sovereign, is immune from suit save as it consents to be sued[.]" *United States v. Sherwood*, 312 U.S. 584, 586 (1941).  With the passage of the Federal Tort Claims Act (FTCA), the United States waived its immunity to tort suits under certain conditions and subject to the exceptions set forth in the FTCA.  *See* 28 U.S.C. 2674 ("The United States shall be liable . . . [for] tort claims, in the same manner and to the same extent as a private individual under like circumstances . . . ."; *id.* § 2680 (setting forth such exceptions in the FTCA).  One of these exceptions is the discretionary function doctrine, which provides the waiver of sovereign immunity by the United States fails to extend to:

> [a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the [g]overnment, whether or not the discretion involved be abused.

*Id.* § 2680(a).

The FTCA also explicitly excludes independent contractors from its scope:

> [T]he term "[f]ederal agency" includes the executive departments, the judicial and legislative branches, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States, but does not include any contractor with the United States.
>
> [The term] "[e]mployee of the government" includes (1) officers or employees of any federal agency, members of the military or naval forces . . . members of the National Guard . . . and persons acting on

> behalf of a federal agency in an official capacity . . . and (2) any officer or employee of a [f]ederal public defender organization[.]

*Id.* § 2671.  But, the United States Supreme Court, in *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18 (1940), created the "concept of derivative sovereign immunity[.]"  *In re KBR, Inc., Burn Pit Litigation*, 744 F.3d 326, 342 (4th Cir. 2014).  "[U]nder *Yearsley*, a government contractor is not subject to suit if (1) the government authorized the contractor's actions and (2) the government 'validly conferred' that authorization, meaning it acted within its [C]onstitutional power."  *Id.* (quoting *Yearsley*, 309 U.S. at 20–21).

Here, there is no dispute the second prong of the *Yearsley* test is met.  The Fort acted within its Constitutional power to authorize the repaving of Hampton Parkway.  Thus, the issue before the Court is whether the Fort authorized ARC and Earthworks' actions.  Two recent decisions, one by the United States Supreme Court, *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016), and one by the Fourth Circuit, *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 647 (4th Cir. 2018), provide guidance on this issue and are discussed at length in the parties' briefs.  Accordingly, the Court will discuss both cases in turn here.

In *Campbell*, the plaintiff filed a class action lawsuit against Campbell-Ewald Company (Campbell), a nationwide advertising and marketing communications agency serving as a government contractor, alleging violations of the Telephone Consumer Protection Act (TCPA) when he received a text message without having given his prior consent.  577 U.S. 153.

"Beginning in 2000, the United States Navy [Navy] engaged Campbell to develop and execute a multimedia recruiting campaign," and in "2005 and 2006, Campbell proposed to the Navy a campaign involving text messages sent to young adults, the Navy's target audience, encouraging them to learn more about the Navy."  *Id.* at 157.  "The Navy approved Campbell's

proposal, conditioned on sending the messages only to individuals who had opted in to receipt of marketing solicitations on topics that included service in the Navy." *Id.* (internal citation omitted).

"Campbell then contracted with Mindmatics LLC (Mindmatics), which generated a list of cellular phone numbers geared to the Navy's target audience—namely cellular phone users between the ages of [eighteen] and [twenty-four] who had consented to receiving solicitations by text message." *Id.* Mindmatics sent a text message to the plaintiff, whose cellular phone number was on the do not call list. *Id.*

The Supreme Court concluded Campbell was unentitled to derivative immunity. It reasoned when a government contractor "both violates federal law [the TCPA] and the [g]overnment's explicit instructions [to send text messages only to individuals who had opted in to receive such messages], as here alleged, no 'derivative immunity' shields the contractor from suit by persons adversely affected by the violation." *Id.* at 166.

On the other hand, the Fourth Circuit Court of Appeals, in *Cunningham*, noted the "scenario [before it] was vastly distinguishable from the facts of *Campbell*." 888 F.3d at 648. The plaintiff in *Cunningham* filed a class action lawsuit against General Dynamics Information Technology Inc. (GDIT), a government contractor, alleging violations of the TCPA when he received an autodialed, prerecorded phone call advertising the commercial availability of health insurance without having given his prior consent. *Id.* at 642–43.

The Centers for Medicare and Medicaid Services (CMS) hired GDIT to make autodialed calls to "keep applicants informed about their eligibility for enrollment in a qualified health plan." *Id.* at 643–44. CMS exercised extensive control over GDIT's scope of work. *Id.* at 644. For example, CMS authorized GDIT to "use an autodialer to make the calls, provided a script for each call, and provided a list [of approximately 2.65 million phone numbers to call]." *Id.* In addition

to providing GDIT with a list of approximately 2.65 million phone numbers to call, CMS divided the list "into seven lists specifying the exact day that GDIT was to call each number and which of the scripts CMS provided that GDIT was to use for each call." *Id.*

When looking at the first *Yearsley* step, analyzing whether CMS authorized GDIT's actions, the Fourth Circuit concluded it did. *See id.* at 647 ("Quite plainly, GDIT performed exactly as CMS directed: GDIT called the number CMS instructed GDIT to call, on the prescribed day, and followed CMS's provided script when leaving the message."). Hence, the Fourth Circuit determined the difference in the case before it with *Campbell* was the government's exercise of significant control over the actions of the subcontractor. Essentially, CMS dictated every jot and title to GDIT. Thus, CMS's exercise of significant control over its subcontractor, as opposed to the Navy in *Campbell* where it provided latitude to its subcontractor to enact the marketing campaign, precluded application of derivative immunity.

Here, the Court concludes the facts of this case are more similar to *Campbell* than *Cunningham*. The Fort did not provide ARC a comprehensive construction design and specification plan to enact. To the contrary, it sought the professional judgment of ARC and Earthworks to design and resurface Hampton Parkway according to all applicable relevant laws and standards. As aptly noted by Mrs. Hill in her response in opposition, "the fact of the matter is that the [g]overnment hires private road contractors *because of* their purported expertise in implementing contractual, legal, and professional standards[.]" Resp. in Opp'n at 15. Thus, this is not a situation similar to *Cunningham* where the government dictated every jot and title.

Consequently, the Court concludes the first element of the *Yearsley* immunity test is unmet, ARC and Earthworks are unentitled to derivative sovereign immunity, and their motion to dismiss for lack of subject matter jurisdiction will be denied.

### B.     Whether the Court should grant ARC and Earthworks' motion for summary judgment they owed no duty to Dr. Hill

ARC and Earthworks aver they "owed no common law duty to Dr. Hill." Mot. at 15. Mrs. Hill posits, to the contrary, "ARC and Earthworks had a contractual and common law duty of due care not to leave hazards or create concealed ones for lawful shoulder travel." Resp. in Opp'n at 18 (emphasis modified).

"A tortfeasor may be liable for injury to a third party arising out of the tortfeasor's contractual relationship with another, despite the absence of privity between the tortfeasor and the third party." *Dorrell v. S.C. Dep't of Transp.*, 605 S.E.2d 12, 14 (S.C. 2004) (citing *Barker v. Sauls*, 345 S.E.2d 244, 244 (S.C. 1986)). "The tortfeasor's liability exists independently of the contract and rests upon the tortfeasor's duty to exercise due care." *Id.* at 15. "This common law duty of due care includes the duty to avoid damage or injury to foreseeable plaintiffs." *Id.*

Here, the Court deems the facts of this case similar to the facts in *Dorrell*. In that case, Elizabeth Darlene Dorrell (Elizabeth) "was injured in a one-car accident" when "a gust of wind caused [her] car to veer to the right and drop off the road onto the dirt shoulder, which was eleven to twelve inches below the road surface." *Id.* at 13. "Due to the drop, [Elizabeth] lost control of her car, the car rolled several times . . . , and [she] suffered permanent injuries and incurred significant medical bills." *Id.*

"The road had been recently repaved pursuant to a contract between the paving company, APAC, and the South Carolina Department of Transportation (SCDOT)." *Id.* Elizabeth "sued APAC and SCDOT on a negligence theory." *Id.* (footnote omitted). Elizabeth "eventually settled with SCDOT . . . , and APAC denied liability and subsequently filed a motion for summary judgment." *Id.* at 13–14. "In support of its motion, APAC argued that the contract [between it and SCDOT] did not authorize [it] to rebuild, repair, or maintain the shoulder area" and instead

9

"required only that the shoulder area, and particularly areas with surrounding vegetation, be left in a neat and presentable condition." *Id.* at 14 (internal quotation omitted).  Furthermore, "APAC described the eleven to twelve inch resulting drop-off as a patent and obvious defect, which SCDOT should have noticed upon inspecting the completed work." *Id.*  And, lastly, "APAC argued that once SCDOT accepted the resurfacing work, APAC was no longer in control of the roadway and therefore no longer liable for injuries caused by the drop-off." *Id.*

The South Carolina Supreme Court rejected these arguments and concluded Elizabeth "was a foreseeable plaintiff, and APAC's duties to [her] stemmed from both the APAC-SCDOT contract and the common law." *Id.* at 16.  Also, the court "join[ed] the majority of jurisdictions in deciding that a contractor's duty of care is not extinguished upon the completion and acceptance of the contractor's work." *Id.* at 18.

In this case, the Court likewise rejects ARC and Earthworks' similar arguments.  Dr. Hill was a foreseeable plaintiff, and ARC and Earthworks owed him a duty to exercise due care in their design and construction work on Hampton Parkway.  ARC and Earthworks argue Dr Hill was not a foreseeable plaintiff, as "[n]o evidence to date has been presented to establish that ARC [or Earthworks] w[ere] aware that bikers utilized Hampton Parkway." Mot. at 18.  This assertion is inaccurate and contradicted by the record.  For example, paragraph 1.1.6 of the Fort's Statement of Work required ARC and Earthworks to, among other things, "follow the recommendations of [the] SDDCTEA Fort Jackson 2011 Comprehensive Traffic Study [the 2011 Study] as [it] relate[s] to signage and markings within [the] area of work."  The 2011 Study included numerous references to bicycle traffic on the Fort, and ARC's project manager, Kevin James Mason, testified he received a copy of the 2011 Study and reviewed it, *see* Mason Depo. 176–77.  Accordingly, the Court concludes ARC and Earthworks owed a duty of care to Dr. Hill, a foreseeable plaintiff.

ARC and Earthworks contend this case is similar to another South Carolina district court case, *Allen v. Greenville Hotel Partners, Inc.*, 409 F. Supp. 2d 672 (D.S.C. 2006), where a hotel franchisor successfully argued it owed no duty to a premises liability plaintiff to require its franchisee hotel owner to install sprinklers, despite the fact the hotel building met local fire codes, *id.* at 677–78. The facts of this case are readily distinguishable from *Allen*, and the Court need not spill significant ink discussing the differences. Put succinctly by Mrs. Hill in her response in opposition, "ARC and Earthworks were not some distant party like the *Allen* franchisor—they were the very contractors performing the work [at issue in the case]." Resp. in Opp'n at 24.

At bottom, as noted in the preceding paragraph, ARC and Earthworks owed a duty of care to Dr. Hill, a foreseeable plaintiff, and the Court will deny ARC and Earthworks' motion for summary judgment as to whether they owed a duty to Dr. Hill.

> **C.    Whether the Court should grant ARC and Earthworks' motion for summary judgment they failed to breach a duty to Dr. Hill and this breach proximately caused damages to him**

Regarding breach, ARC and Earthworks aver Mrs. Hill "fails to present evidence of a negligent act or omission in the scope of work completed by ARC and its subcontractors." Mot. at 18. Mrs. Hill, in her response, notes ARC and Earthworks fail "to expound on this conclusion and offer no precedent with which to compare" and "this assertion has also already been dealt with above[,as ARC and Earthworks were] obligated to use due care to make the roadway safe for lawful travel [and they failed to do so by, among other things, neglecting to maintain a positive slope on the drainage grates]." Resp. in Opp'n at 27.

Here, at the summary judgment stage and considering the Court's denial of ARC and Earthworks' motion for summary judgment they owed no duty to Dr. Hill, a question of fact exists as to whether the work completed on Hampton Hill constitutes a breach of their duty. Hence, the

11

Court will deny ARC and Earthworks' motion for summary judgement they failed to breach a duty owed to Dr. Hill.

As to causation, ARC and Earthworks contend Mrs. Hill has failed to produce "circumstantial evidence to establish the grate caused Dr. Hill's fall[,]" especially in light of the fact "[t]here were no eyewitnesses to [his] fall." Mot. at 20. Mrs. Hill maintains, on the other hand, "there is ample evidence that would allow a jury to conclude Dr. Hill crashed [his bicycle] when he hit the grate." Resp. in Opp'n at 28.

Here, the Court concludes Mrs. Hill has presented sufficient evidence as to causation to allow this matter to proceed to a jury. For example, as noted by Mrs. Hill, one of her experts, along with a defense expert, "agree Dr. Hill flipped over the handlebars of his bicycle due to a sudden intense deceleration caused by him striking a fixed object" and "there is no other fixed object nearby" the accident site other than the sunken grate. *Id.* ARC and Earthworks' ask this Court to serve as a factfinder, which is inappropriate at the summary judgment stage. Thus, the Court will deny ARC and Earthworks' motion for summary judgment as to causation.

### V.     CONCLUSION

For the reasons stated above, it is the judgment of the Court that ARC and Earthworks' amended motions are **DENIED**. Specifically, ARC and Earthworks' motion to dismiss for lack of subject matter jurisdiction is **DENIED**, and ARC and Earthworks' motion for summary judgment as to duty, breach, and causation is **DENIED**.

**IT IS SO ORDERED.**

Signed this 6th day of January 2022, in Columbia, South Carolina.

                                                                        s/ Mary Geiger Lewis
                                                                       MARY GEIGER LEWIS
                                                                       UNITED STATES DISTRICT JUDGE